# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| DATA MANGEMENT, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 3:07-CV-0966-O |
| | § | |
| CONTROL MODULE, INC., | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Pursuant to the order of the district court filed on July 23, 2008, came on to be considered Defendant Control Module, Inc.'s Motion to Transfer Case out of District/Division or, Alternatively, to Dismiss. Having reviewed the pleadings filed in this case and the briefs and appendices submitted by the parties, the Magistrate Judge finds and recommends as follows:

*Background:*

Defendant Control Module, Inc. ("CMI") sells computer terminals used for employee time and attendance tracking, inventory control, work in process management and access control. Defendant's Brief in Support, p. 2. CMI manufactures such terminals for companies like plaintiff Data Management, Inc. ("DMI") which develops and markets computerized time and attendance software for employee labor tracking. Plaintiff's Opposition Brief, p. 3. TimeClock Plus, DMI's employee tracking software, operates via a computer terminal similar to that sold by CMI. DMI's Appendix ("DMI App."), p. 18, ¶ 2 (Declaration of David Bray). In fact, CMI manufactured such terminals for DMI. DMI App., p. 5, ¶ 6 (Declaration of Jorge Ellis).

In 2005, CMI sued two of its former employees, Timothy Morello and John Dybowski, in

Connecticut state court alleging breach of fiduciary duty and misappropriation of trade secrets. *See* CMI's Appendix ("CMI App."), pp. 1-3 (Declaration of Edward F. Spinella); DMI App., pp. 36-60. In that case, CMI alleged that Morello and Dybowski improperly used CMI's trade secrets to develop competing computer terminals. CMI App., pp. 1-2, ¶ 3. The jury returned verdicts in favor of CMI and against Morello and Dybowski and awarded damages to CMI. *Id.*

In February 2007, CMI filed a lawsuit in Connecticut state court against DMI (the "Connecticut action") alleging that DMI aided and abetted Morello and Dybowski in forming a company, Xipher Technologies, LLC, for the purposes of developing computer terminals to compete with terminals sold by CMI. Ct. Cplt.,¶¶ 32-60, CMI App., pp. 5-12. CMI also alleges that Morello and Dybowski held secret meetings with DMI officials to demonstrate their competing products and ultimately replaced CMI as the supplier of terminals to DMI. *Id.* at ¶¶ 34-36, 39, 41, 52-54. DMI removed the Connecticut state court action to the United States District Court for the District of Connecticut (CMI App., p. 2, ¶ 4), and on May 4, 2007, moved to dismiss Count II of CMI's complaint alleging a violation of the Connecticut Uniform Trade Secrets Act ("CUTSA"). On May 18, 2007, CMI filed its motion for extension of time in the Connecticut federal court requesting an extension until June 25, 2007, to file its response to DMI's motion to dismiss and noting *inter alia* that it had sent a cease and desist letter to DMI's counsel and that if CMI's demands were not met, CMI planned to amend Count II to allege additional violations of CUTSA. DMI App., p. 68.

Specifically, in the May 16, 2007 letter, counsel for CMI demanded that DMI (1) return technical documents and specifications relating to CMI's products; (2) refrain from disclosing any of CMI's product specifications, including its terminal interface protocols in its TimeClock

2

Plus software; and (3) immediately cease use of CMI's terminal interface protocols in its Timeclock Plus software. DMI App., p. 12. CMI further demanded that DMI refrain from using any cost and pricing information that it may have received through its business with Morello and Dybowski and return any documents containing such information. *Id*.

DMI did not accede to the demands of the May 16th letter, but rather filed the present declaratory judgment action against CMI. DMI seeks a declaration that (1) DMI has not misappropriated or infringed any alleged trade secrets or other proprietary rights of CMI; (2) DMI's use of its TimeClock Plus software does not misappropriate or infringe any alleged trade secrets or other proprietary rights of CMI; (3) the "technical documents and specifications relating to CMI's products," referenced in CMI's May 16 letter, are not trade secrets; (4) the "terminal interface protocols" references in CMI's May 16 letter are not trade secrets; and (5) the "terminal interface protocols" referenced in CMI's May 16 letter are not the property of CMI. *See* Complaint filed in this case ("Tx. Cplt."), p. 9, ¶ 33.

On August 17, 2007, CMI filed its motion to transfer this action to the District of Connecticut pursuant to the "first to file" rule or, in the alternative, for the court to dismiss the case as an improper use of the Declaratory Judgment Act. The joint motion submission included a response by DMI and CMI's reply.[1]

Subsequently, on December 10, 2007, the Connecticut federal court granted DMI's motion and dismissed CMI's claim for misappropriation of trade secrets. *Control Module, Inc.*

---

[1] On February 8, 2008, DMI filed a supplemental brief in opposition to CMI's motions. On August 8, 2008, CMI filed a supplemental brief in support of its motion and on August 11, 2008, DMI filed a supplemental response. In response to a letter from this court, both parties also filed supplemental letter briefs.

*v. Data Management, Inc.*, Civ. No. 3:07cv00475, 2007 WL 4333814, at *4 (D. Conn. Dec. 10, 2007). The Connecticut district court held that the trade secrets count failed to state a claim under the Connecticut Uniform Trade Secrets Act "[b]ecause the [c]omplaint does not allege that Data Management acquired, disclosed, or used the Trade Secrets . . ." On January 15, 2008, CMI filed an amended complaint against DMI in the Connecticut case.

*Holdings and Findings:*

CMI moves to transfer this case to the District of Connecticut pursuant to the first to file rule, contending that the Connecticut court, as the first to retain jurisdiction, should decide DMI's declaratory judgment claim. Under the first to file rule, "when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (citing *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985)). The rule does not require that the cases be identical and "[t]he crucial inquiry is one of 'substantial overlap' . . . ." *Id*. at 951. "Once the likelihood of a substantial overlap between the two suits ha[s] been demonstrated, it [is] no longer up to the [second filed court] to resolve the question of whether both [suits] should be allowed to proceed." *Cadle*, 174 F.3d at 605 (quoting *Mann Mfg. Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971)) Therefore, the court must limit its inquiry to the "potential overlap between the two cases." *Id*. at 606. If the court determines that there is sufficient overlap, "the proper course of action [is] for the court to transfer the case to the [first-filed] court to determine which case

should, in the interests of sound judicial administration and judicial economy, proceed." *Id*.

At the center of the Connecticut action is the development of data-collection computer terminals by Morello and Dyboswki that compete with the terminals produced by CMI. In its amended complaint, CMI alleges that "DMI intentionally interfered with the business relationship between CMI and Mr. Morello and Mr. Dyboswki when it induced, encouraged, aided, or abetted Mr. Morello and Mr. Dyboswki to . . . create competing products . . ., resign from CMI; and establish Xipher to create products in competition with CMI." Connecticut Amended Cplt., Ex. B to CMI's October 2, 2008 letter brief to the court, p. 10, ¶ 66. CMI brings claims for tortious interference, aiding and abetting a breach of fiduciary duty, civil conspiracy, and violation of the Connecticut Unfair Trade Practices Act. *Id*., Counts I - IV. These legal claims all stem from the duty of loyalty owed by Morello and Dybowski to CMI by virtue of their employment relationship with the company. Connecticut Amended Cplt., p. 10, ¶¶ 63-66; p. 11, ¶ 64; p. 12, ¶ 70; p. 13, ¶ 66.

By contrast, this case focuses on the ownership of the trade secrets underlying production of the computer terminals for DMI. In its complaint, DMI alleges that it provides its "command set" to each company that has manufactured computer terminals, including CMI and Xipher. Tx. Cplt. ¶ 11. DMI provides this command set by giving each company a terminal it is currently using so the company can reverse engineer a new terminal compatible with DMI's software. *Id*. DMI alleges that it provided CMI and Xipher with the DMI command set in this same manner and then CMI, and subsequently Xipher, developed a compatible terminal for DMI's use. *Id*. ¶¶ 15, 19. DMI cites to the May 16, 2007 cease and desist letter from CMI, in which CMI references a "command set" or "command codes" used by CMI's terminals, as well as technical

specifications and cost and pricing information for the terminals. *Id.* ¶ 30. DMI seeks a declaration from the district court that it is not misappropriating or infringing any of CMI's alleged trade secrets, that use of its software does not misappropriate or infringe on such trade secrets, that the "technical documents and specifications relating to CMI's products" referenced in CMI's letter are not trade secrets and that the "terminal interface protocols" referenced therein are not trade secrets owned by CMI. *Id.* ¶ 33.

Although both cases arguably grow out of the relationship between DMI and CMI, the two actions address separate issues and legal claims. The Connecticut action centers on creation of the actual terminals by Morello and Dybowki and their resulting breach of their duty of loyalty owed to CMI. It does not call into question the ownership or alleged misappropriation of the trade secrets used in developing those terminals, which is at issue in the present action. In addition, CMI has failed to show any substantial likelihood of conflicting rulings. Putting aside the admitted overlap of some facts in the cases (i.e. that Morello and Dybowski created terminals for DMI that were similar to those created for DMI by CMI), there is no evidence that a ruling in one of these actions will have any effect on the rulings or outcome in the other action. CMI's overlapping discovery argument (i.e. that documents produced by DMI in this case were also produced by DMI in the Connecticut action) does not change this analysis. Therefore, because the actions do not substantially overlap, the first-to-file rule does not apply here and CMI's motion to transfer this case to the District of Connecticut should be denied.[2]

---

[2]DMI contends that the court should analyze the convenience factors under 28 U.S.C. § 1404(a), which it contends weigh against transferring this case to the Connecticut court. However, CMI does not seek a transfer under 1404(a), which addresses transfers based on the doctrine of *forum non conveniens*, and DMI cites no Fifth Circuit precedent supporting such an analysis under the first to file rule. To the contrary, the Fifth Circuit dictates that under the first

CMI alternatively argues that this case should be dismissed because it constitutes an improper use of the Declaratory Judgment Act. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), "is an enabling act, which confers discretion on the courts rather than an absolute right on a litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S.Ct. 2137, 2143 (1995). "The Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Id*. at 286. In analyzing whether to decide or dismiss a declaratory judgment suit, a federal district court must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000). CMI does not dispute that this case is justiciable and that an "actual controversy" exists between the parties. CMI's moving brief at p. 12. The second factor, that the district court has authority to decide this action, is also undisputed. *Id*. at p. 13. Therefore, the issue before the court is whether it should exercise its discretion to decide or dismiss the action.

The Fifth Circuit has adopted seven nonexclusive factors (the "*Trejo* factors") that a district court must consider in deciding whether to exercise its discretion to decide or dismiss a declaratory action:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;

---

to file rule, if the court finds that the two actions substantially overlap, it should transfer the second filed case to the first filed court. *Cadle*, 174 F.3d at 606 (holding that once the court determines that the cases substantially overlap, "the proper course of action [is] for the court to transfer the case to the [first-filed] court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed.").

>   (2) whether the plaintiff filed suit in anticipation of a lawsuit filed
>   by the defendant;
>
>   (3) whether the plaintiff engaged in forum shopping in bringing the
>   suit;
>
>   (4) whether possible inequities in allowing the declaratory plaintiff
>   to gain precedence in time or to change forums exist;
>
>   (5) whether the federal court is a convenient forum for the parties
>   and witnesses;
>
>   (6) whether retaining the lawsuit would serve the purposes of
>   judicial economy; and
>
>   (7) whether the federal court is being called on to construe a state
>   judicial decree involving the same parties and entered by the court
>   before whom the parallel state suit between the same parties is
>   pending.

*Sherwin-Williams Co. v. Holmes Co.*, 343 F.3d 383, 388 (5th Cir. 2003) (citing *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994)*)*. The court is required to analyze and balance the facts and circumstances of the instant suit against these factors or it will be deemed to have abused its discretion. *Vulcan Materials Company v. City of Tehuacana*, 238 F.3d 382, 390 (5th Cir. 2001).

Here there is no pending state court action but a somewhat related federal court proceeding. Therefore, "the proper allocation of decision-making between state and federal courts" is not raised. *See Sherwin-Williams*, 343 F.3d at 390-91, 394, 397. In *Sherwin-Williams*, the Fifth Circuit identified three overarching concerns underlying the *Trejo* inquiry: the proper allocation of decision-making between state and federal courts, fairness, and efficiency. *Sherwin-Williams*, 343 F.3d at 390-91. In discussing efficiency, the court explained the importance of avoiding piecemeal litigation in state and federal court in part "because of the potential for inconsistent state and federal court judgments, especially in cases involving state

law issues." *Id*. at 391. Therefore, two of the three areas of concern focus on those problems inherent with respect to litigation pending in both a federal and state forum – not on the problems presented in a case such as this one, where the parties are litigating in two federal courts. Accordingly, because there is no pending state court action, the first and seventh *Trejo* factors, which address the balance between state and federal courts, weigh against dismissal of this action.

The second, third and fourth *Trejo* factors address the fairness aspect of the inquiry. On the date that DMI filed the present action, CMI's complaint against DMI, claiming that DMI had misappropriated trade secrets in violation of CUTSA by inducing, aiding or abetting Morello and Dybowksi to use their knowledge of CMI's trade secrets to CMI's detriment, was pending in the Connecticut federal court. There is nothing to show that prior to May 31, 2007, the parties were attempting to negotiate any resolution of the existence of any trade secrets. To the contrary, within less than two weeks from the date of CMI's cease and desist letter, DMI filed the present declaratory judgment action, clearly evidencing the existence of a "case and controversy" between the two. CMI did not amend its complaint until after the court there dismissed its CUTSA claim (Count II). As discussed above, CMI's amended complaint in the Connecticut action pertains only to DMI's role in the loyalty breaches by Morello and Dybowski, not whether DMI misappropriated any alleged trade secrets of CMI at issue in DMI's declaratory judgment action.

While the facts may suggest that DMI filed this action in anticipation of further litigation between itself and CMI, "[m]erely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of . . . litigation, is not in itself improper anticipatory

9

litigation or otherwise abusive 'forum shopping.' " *Sherwin-Willians*, 343 F.3d at 391.  Further, there is no indication that CMI delayed filing a misappropriation claim in Connecticut relating to the trade secrets at issue here because of ongoing settlement discussions with DMI.  Nor has CMI shown that this forum is burdensome or prejudicial so as to render DMI's forum choice abusive.  Therefore, DMI's filing its complaint in this court is not improper anticipatory litigation or abusive forum shopping and these *Trejo* factors weigh against dismissal.

As to the fifth and sixth *Trejo* factors, which address judicial efficiency, pursuing this case in Connecticut would be more convenient for CMI, which maintains its office in that state and where most of its witnesses reside.  However, DMI's offices, key witnesses and documents are located in the Northern District of Texas and the manufacturing of the computer terminals at issue, as well as several of the meetings alleged between DMI and Morello and Dybowski took place in this district.  Therefore, inconvenience and travel will occur whether trial takes place in Dallas or in the District of Connecticut.  While judicial economy may be served by trying both cases before one federal court, in light of the analysis under the other *Trejo* factors and the fact that no parallel claim is pending in Connecticut, neither transfer of Data Management, Inc's complaint nor dismissal of the same is warranted.

**RECOMMENDATION:**

Based on the foregoing, it is recommended that the motion to transfer or, alternatively, to dismiss filed by Defendant Control Module, Inc. be denied.

Signed this 21st day of October, 2008.

_____
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten (10) days after being served with a copy of this recommendation. Pursuant to *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996)(*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten (10) day period may bar a *de novo* determination by the district judge of any finding of fact and conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.